PER CURIAM.
We have for review a referee’s report recommending that respondent be found guilty of professional misconduct and suspended from the practice of law for ninety days. We have jurisdiction. See art. V, § 15, Fla. Const. For the reasons more fully explained below, we approve the referee’s findings of fact and recommendations as to guilt, but we disapprove the recommended discipline, and instead impose a ninety-one-day suspension.
FACTS
On April 1, 2008, The Florida Bar filed a four-count complaint against respondent, Mary Alice Gwynn, alleging various instances of misconduct relating to her representation of two clients in federal bankruptcy court matters. The complaint was referred for a hearing before a referee. A final hearing was held on August 9,10, and 12, 2010, and subsequently, the referee filed his Report of Referee on October 25, 2010. In his report, the referee made the following findings of fact.[1]
First, the referee found that respondent had represented a client in the United *427 States Bankruptcy Court for the Southern District of Florida, and that during the period of her representation, respondent failed to expedite the litigation in the best interest of the client. Instead, respondent filed numerous motions for sanctions against opposing counsel and other frivolous claims, needlessly delaying the bankruptcy proceedings. The referee found that by failing to take substantive action in the client’s case, respondent failed to competently represent her client. Based on these findings the referee recommended that respondent be found guilty of violating rules 4-1.1 (lawyer shall provide competent representation); 4-3.2 (lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client); 4-8.4(a) (lawyer shall not violate or attempt to violate the Rules of Professional Conduct); and 4-8.4(d) (lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice) of the Rules Regulating the Florida Bar.
Next, the referee found that because of the many frivolous motions that respondent filed in the bankruptcy case, the bankruptcy judge entered an order, on April 26, 2006, finding that respondent had acted in bad faith. In the order, the bankruptcy judge set forth specific findings regarding the numerous instances in which respondent had acted dishonestly, incompetently, and in bad faith in the pending litigation. Specifically, the bankruptcy judge found that respondent had (1)'filed frivolous claims to harass her opponent and opposing counsel; (2) failed to research and verify claims she advanced in motions she filed with the court; (3) engaged in willful abuse of the judicial system; and (4) continually made allegations, both in pleadings filed with the court and in her testimony before the court, that were simply incorrect or false. The bankruptcy judge found that respondent’s conduct was “objectively unreasonable and vexatious” and “sufficiently reckless to warrant a finding of conduct tantamount to bad faith ... for the purpose of harassing her opponent.”
The referee further found that the bankruptcy court’s April 26, 2006, order imposed a $14,000 sanction against respondent and referred the matter to The Florida Bar for ethical review. The bankruptcy court’s order was affirmed by the United States District Court, Southern District of Florida, by order dated March 14, 2007. Based on these facts, the referee recommended that respondent be found guilty of violating Rules Regulating the Florida Bar 4-3.1 (lawyer shall not bring or defend a proceeding or assert or controvert an issue therein unless there is a basis for doing so that is not frivolous); 4-3.3(a)(l) (lawyer shall not knowingly make a false statement of material fact or law to a tribunal); 4-4.1(a) (in the course of representing a client, a lawyer shall not knowingly make a false statement of material fact or law to a third person); 4-4.4(a) (in representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay or burden a third person); 4-8.4(a) (lawyer shall not violate or attempt to violate the Rules of Professional Conduct); 4-8.4(c) (lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation); and 4-8.4(d) (lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice).
Finally, the referee found that despite the fact that respondent no longer represented any party in the case, she continued to file pleadings and papers with the federal bankruptcy court, and that on May 15, 2006, and the court entered an “Order Directing Mary Alice Gwynn, Esquire to Stop Filing Notices of Filing.” In this order, the bankruptcy judge found that *428 respondent had filed hundreds of pages of documents pursuant to notices of Filings or notices to the court, and directed her to stop filing such items unless specifically ordered to do so by the court or unless mandated by either the bankruptcy rules or the local rules. Subsequently, on June 7, 2006, the court entered another order finding that even after the May 15, 2006, order was entered, respondent continued to file notices of filing, in defiance of the bankruptcy court’s order. The order also found that respondent “improperly attempted to influence [the] court by filing numerous Notices of Filing containing inappropriate hearsay documents that are unrelated to any pending contested or adversary proceedings,” and in doing so, she “engaged in unprofessional conduct before [the] court.” Respondent was fined $500, and the court ordered that she be fined $250 for each future document she filed in defiance of the court order. Based on these facts, the referee recommended that respondent be found guilty of violating rules 4 — 3.4(c) (lawyer shall not knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists); 4-3.5(a) (lawyer shall not seek to influence a judge, juror, prospective juror, or other decision maker except as permitted by law or the rules of court); 4-8.4(a) (lawyer shall not violate or attempt to violate the Rules of Professional Conduct); and 4-8.4(d) (lawyer shall not engage in conduct in connection with the practice of law that is prejudicial to the administration of justice).
As for discipline, the referee recommended that respondent be suspended for ninety days and be required to pay the Bar’s costs. Respondent now seeks review of the referee’s findings of fact and recommendation as to discipline. The Bar has filed a cross-petition for review, seeking review of the referee’s recommendation as to discipline.
ANALYSIS[2]
I. FACTUAL FINDINGS
With regard to a referee’s findings of fact, this Court has repeatedly stated that its review is limited, and if a referee’s findings of fact are supported by competent, substantial evidence in the record, the Court will not reweigh the evidence and substitute its judgment for that of the referee. See Fla. Bar v. Patrick, 67 So.3d 1009, 1014 (Fla.2011); see also Fla. Bar v. Frederick, 756 So.2d 79, 86 (Fla.2000). “To successfully challenge a referee’s factual findings, a party must show there is a lack of evidence in the record to support such findings or that the record clearly contradicts the referee’s conclusions.” Fla. Bar v. Head, 27 So.3d 1, 7 (Fla.2010).
Here, respondent first contends that the referee improperly relied on the bankruptcy court’s orders as the exclusive support for his findings of fact and thus did not make “independent” factual findings. On the issue of his reliance on the bankruptcy court orders, the referee stated in his report:
The most persuasive evidence is that advanced by the federal bankruptcy *429 judge, who conducted evidentiary hearings and thereafter, determined that respondent had engaged in the grave, and repeated misconduct he carefully outlined in three separate orders. I have taken judicial notice of these orders, and relied upon the facts set forth in these orders, in reaching my determination in this case. I have done this after confirming that the Supreme Court of Florida has made it abundantly clear that a referee in a Florida Bar disciplinary proceeding may consider and rely upon a federal court’s order and factual findings. In The Florida Bar v. Shankman [41 So.3d 166] 2010 WL 2680248 (Fla. July 8, 2010), 85 Fla. L. Weekly S445, the respondent challenged the referee’s ruling taking judicial notice of a federal district court judge’s order and a magistrate’s report and recommendation in the respondent’s underlying civil action. Additionally, the respondent contended that the facts in those documents “tainted” the instant proceedings and compromised the referee’s independent review of the facts. In rejecting Mr. Shank-man’s claim, the Supreme Court of Florida noted that:
[t]he “ease law unequivocally supports the referee’s taking judicial notice of the federal report and recommendation and order in this bar disciplinary case.” See, e.g., Fla. Bar v. Head, 27 So.3d 1 (Fla.2010); Tobkin, 944 So.2d at 224; Fla. Bar v. Vining, 707 So.2d 670, 672 (Fla.1998); Fla. Bar v. Calvo, 630 So.2d 548, 549-50 (Fla.1993); Fla. Bar v. Rood, 620 So.2d 1252, 1255 (Fla.1993). Thus, the referee could properly consider the federal district court’s order and magistrate’s report and, although not done here, the referee cold have relied “upon them as support for the disciplinary ftndings of fact” [emphasis provided]. Head, 27 So.3d at 8.
Shankman, at 2 [170].
The Court relied on this same principle in a case decided a few days earlier: The Florida Bar v. Behm [41 So.3d 136], 2010 WL 2612335 (Fla.), 35 Fla. L. Weekly S419 (Fla. July 1, 2010). In this case involving tax issues, the Court found that the referee properly admitted a North Carolina trial court order into evidence, and considered it in making his findings in the Bar disciplinary case. As indicated in the Shankman citation, supra, the Court reached the same conclusion in The Florida Bar v. Head, 27 So.3d 1 (Fla.2010). That case is particularly relevant to the instant case because it involved a respondent representing a client in a Chapter 13 bankruptcy case. The referee in that case found that respondent guilty of many of the same rule violations of which Ms. Gwynn is guilty: conduct involving fraud, deceit or misrepresentation; knowingly making a false statement to a third person; conduct that was prejudicial to the administration of justice; and knowingly making a false statement to the tribunal. In Head, the referee recommended a 60-day suspension, but the Court rejected that finding and suspended respondent for one year. In so doing, I have noted that the Court rejected the respondent’s argument that the referee erred (in relying upon the facts established in the underlying bankruptcy proceeding). As did the referee in that proceeding, I have taken judicial notice of the bankruptcy documents offered by The Florida Bar, in reliance on section 90.206(6), Florida Statutes (2009) and The Florida Bar v. Tobkin, 944 So.2d 219 (Fla.2006).
Accordingly, standing alone, the three sanctioning orders entered by the federal bankruptcy judge on April 26th, May 15th, and June 7th, 2006 are sufficient to meet The Florida Bar’s burden of proof as to all charges related to the Walker bankruptcy.
*430 The referee is correct in his assessment of the Court’s case law. The Court has clearly held that a referee in a bar disciplinary proceeding can properly rely upon facts established in orders and decisions of other tribunals to support his or her findings of fact.[3] In Florida Bar v. Tobkin, 944 So.2d 219, 223 (Fla.2006), the respondent challenged the referee’s finding of fact as to several counts on the basis that the findings were based on the “hearsay language included in the ‘unauthenticated’ opinion of the Fourth District in Rose v. Fiedler, 855 So.2d 122 (Fla. 4th DCA 2003) [iquashed sub nom. Hussamy v. Rose, 916 So.2d 785 (Fla.2005) ].”[4] The Court rejected this challenge, explaining that because bar disciplinary proceedings are “quasi-judicial rather than civil or criminal, the referee is not bound by the technical rules of evidence. Consequently, a referee has wide latitude to admit or exclude evidence and may consider any relevant evidence, including hearsay and the trial transcript or judgment in a civil proceeding.” Tobkin, 944 So.2d at 224 (citations omitted). The Court further explained that even if the rules of evidence did apply strictly in bar proceedings, the referee’s consideration of the opinion would have been proper as a matter — decisional law — which, under section 90.201, Florida Statutes (2005), must be judicially noticed. Id. at 224.
Similarly, in Florida Bar v. Head, 27 So.3d 1 (Fla.2010), the Court rejected the respondent’s contention that the referee should not have relied on facts established in documents and decisions from a bankruptcy proceeding of which the referee had taken judicial notice. The Court stated that “it is well established that in bar disciplinary proceedings, the referee is permitted to consider all relevant information pertaining to the alleged misconduct,” and thus, “the referee was permitted to consider the bankruptcy court documents and rely on them as support for the disciplinary findings of fact.” Id. at 7-8 (emphasis added); see also Fla. Bar v. Shankman, 41 So.3d 166, 170 (Fla.2010) (rejecting respondent’s contention that referee misapplied judicial notice provision of section 90.202(2), Florida Statutes (2009), and concluding that referee properly considered federal district court sanction order and underlying magistrate’s report and recommendation). Accordingly, we reject respondent’s arguments that the referee improperly relied upon the bankruptcy court orders in support of his findings of fact.
Moreover, as the Bar points out, the referee also heard the testimony of the Bar’s bankruptcy expert, Patrick Scott, which clearly supported the referee’s findings of fact. Mr. Scott testified that the kind of bankruptcy proceeding respondent was involved in is typically a very simple proceeding and that instead of properly *431 expediting matters, she presented “a great many obstacles to the court reaching the issues” that were the subject of the request for relief. He further stated that he had “never seen a situation that approaches this one for over-litigiousness” and “bringing information to the attention of the court that was not relevant, not material or not necessary to the court’s determination.” He stated that respondent “in many instances filed papers with the court that were meant as ad hominem attacks upon parties and not upon the issues” and made representations to the court for which she had no support. Scott also continued to testify at length about respondent’s conduct in overlitigating the case and the filings and pleadings that led to her being sanctioned by the bankruptcy judge. Accordingly, we conclude that the referee’s factual findings are supported by competent substantial evidence in the record.[5]
Next, respondent contends that the referee’s factual findings cannot be upheld because she was unable to confront her “accuser.” She states that the Bar refused to make Judge Hyman, the federal bankruptcy court judge, available for deposition or appear as a witness at trial. She further states that she was repeatedly “blocked” from taking the judge’s deposition and that she was “precluded” from conducting any discovery related to the “complaining witness-judge.” Respondent does not specifically explain in her briefs how she was blocked or precluded from deposing or calling Judge Hyman as a witness at trial. However, the record shows that she sought to have the referee issue a subpoena for deposition to Judge Hyman, that the Bar objected, and that the referee, treating the Bar’s objection as a motion to quash, refused to issue the subpoena.
The Court reviews a referee’s rulings on discovery matters using an abuse of discretion standard. See Fla. Bar v. Berthiaume, 78 So.3d 503 (Fla.2011). Respondent argues that there were several areas of inquiry she wanted to depose Judge Hyman on, including his potential bias against her and in favor of *432 opposing counsel in the bankruptcy proceeding, the internal inconsistency of his orders, and his unequal and disparate treatment of respondent, as compared to the other attorneys involved in the bankruptcy proceeding. The transcript of the hearing before the referee regarding the issuance of the subpoena shows that respondent made similar arguments before the referee. However, the referee ultimately concluded that Judge Hyman was not a necessary factual witness in this matter, considering that respondent had requested and the referee had issued subpoenas for several other witnesses who were attorneys involved in the bankruptcy case. The referee stated, “At this point, I don’t see anything that cannot be proven through those attorneys, and not only proven as far as the Florida Bar goes with the Florida Bar trying to prove their case, but also with you, Ms. Gwynn, and Mr. Thompson, use those witnesses to your benefit with regard to whether or not the Bar can prove their case.” We conclude that respondent has not shown that the referee abused his discretion in refusing to issue a subpoena to the federal bankruptcy judge.
II. DISCIPLINE
 In reviewing a referee’s recommended discipline, this Court’s scope of review is broader than that afforded to the referee’s findings of fact because, ultimately, it is our responsibility to order the appropriate sanction. See Fla. Bar v. Ratiner, 46 So.3d 35, 39 (Fla.2010); see also art. V, 15, Fla. Const. However, generally speaking this Court will not second-guess the referee’s recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions. See Ratiner, 46 So.3d at 39; see also Fla. Bar v. Temmer, 753 So.2d 555, 558 (Fla.1999).
Here, the referee recommended that respondent be suspended for ninety days and be required to pay the Bar’s costs. In recommending a suspension of ninety days, the referee cited the following cases: Florida Bar v. Committe, 916 So.2d 741 (Fla.2005) (imposing a public reprimand where the lawyer knowingly failed to obey the rules of the tribunal, filed two frivolous federal lawsuits, and abused the legal process); Florida Bar v. Bloom, 632 So.2d 1016 (Fla.1994) (imposing a ninety-one-day suspension against a lawyer who failed to comply with the rules of the tribunal and engaged in conduct prejudicial to the administration of justice); Fla. Bar v. Broida, 574 So.2d 83 (Fla.1991) (imposing one-year suspension where an attorney was found to have raised and filed frivolous claims, filed notices of taking depositions without following appropriate procedures, filed rambling filings, continuously misrepresented facts to the court, personally attacked the integrity of multiple lawyers and judges, and unnecessarily delayed court actions by filing frivolous pleadings); Fla. Bar v. Germain, 957 So.2d 613 (Fla.2007) (imposing one-year suspension where respondent made false allegations and accusations in a frivolous petition for injunction for protection against repeat violence and engaged in other misconduct, including knowingly disobeying an obligation under the rules of a tribunal, conduct intended to disrupt a tribunal, and conduct prejudicial to the administration of justice); Florida Bar v. Hagendorf, 921 So.2d 611 (Fla.2006) (imposing two-year suspension where the lawyer was found guilty of filing a frivolous quiet title action and a number of lawsuits against the state bar in another jurisdiction); and Florida Bar v. Klein, 774 So.2d 685 (Fla.2000) (disbarring attorney for forum-shopping, incompetence, knowingly disobeying the rules of the tribunal, filing frivolous pleadings, and engaging in conduct that was dishonest and prejudicial to the administration of justice).
*433 This case law and the Standards for Imposing Lawyer Sanctions[6] clearly support a suspension in this case. However, the Bar argues that a ninety-one-day rehabilitative suspension, rather than the referee’s recommended ninety-day suspension, is required. We agree. Only one of the cases specifically cited by the referee involved a suspension of less than ninety-one days, and although the referee found several mitigating circumstances — (1) absence of prior disciplinary record, (2) personal or emotional problems, and (3) imposition of other sanctions — it is unclear what weight the referee gave to them. The referee found respondent’s misconduct in the bankruptcy case to be “intentional, serious and repeated, despite and in defiance of warnings issued to her, and sanctions imposed against her, by a sitting federal judge.” Further, he recommended that she be found guilty of fifteen separate rule violations, including making false statements, conduct involving dishonesty, deceit, and misrepresentation, making frivolous claims, using means with no other purpose but to delay or harass, failing to provide competent representation, failing to reasonably expedite litigation, and conduct prejudicial to the administration of justice.
Additionally, as discussed in detail in his orders, the bankruptcy judge found that respondent made numerous allegations of wrongdoing and dishonesty against opposing counsel in the bankruptcy case with no basis in fact for doing so. The bankruptcy judge concluded that her conduct in making these baseless allegations was “objectively unreasonable and vexatious” and “sufficiently reckless to warrant a finding of conduct tantamount to bad faith.” Further, as evidenced by Judge Hyman’s May 15, 2006, and June 7, 2006, orders, respondent intentionally violated the court order directing her to stop filing “notices of filing” in the bankruptcy proceeding and was again sanctioned by the bankruptcy court for doing so.
Given the obvious seriousness of respondent’s misconduct in this case, we conclude that a ninety-one-day suspension is warranted. In Florida Bar v. Head, 27 So.3d 1 (Fla.2010), we imposed a one-year suspension where the respondent, as counsel for debtors in a bankruptcy case, was found to have been dishonest with the bankruptcy court regarding his receipt of money from the debtors’ refinancing of a loan, to have filed a suggestion of bankruptcy when he knew no petition for bankruptcy had been filed, and to have represented the debtors when he had a conflict of interest. The bankruptcy court also sanctioned the respondent, prohibiting him from practicing before the bankruptcy court for ninety days. Id. at 5. Respondent was found guilty of violating many of the same rules as in the instant matter, including Rules Regulating the Florida Bar 4 — 1.7(b), 4-3.1, 4-3.3(a)(l), 4-4.1(a), 4-8.4(c), and 4-8.4(d). Id. at 5-6; see also Fla. Bar v. Nunes, 734 So.2d 393 (Fla.1999) (imposing a three-year suspension for filing a frivolous lawsuit, continuing to represent clients after being discharged, *434 making disparaging remarks about judges and opposing counsel, and making false representations to a tribunal in violation of rule 4-8.4(d), among others).
CONCLUSION
Accordingly, Mary Alice Gwynn is hereby suspended from the practice of law for ninety-one days. The suspension will be effective thirty days from the filing of this opinion so that Gwynn can close out her practice and protect the interests of existing clients. If Gwynn notifies this Court in writing that she is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Mary Alice Gwynn shall fully comply with Rule Regulating the Florida Bar 3-5.1(g). Further, Gwynn shall accept no new business from the date this opinion is filed until she is reinstated.
Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300, for recovery of costs from Mary Alice Gwynn in the amount of $21,060.27, for which sum let execution issue.
It is so ordered.
CANADY, C.J., and PARIENTE, LEWIS, QUINCE, POLSTON, LABARGA, and PERRY, JJ., concur.

. The referee found that count I of the complaint had not been proven. The Bar does not seek review of that finding. It is therefore approved without further discussion.

. Respondent raises the following issues in addition to those discussed below: (1) whether the referee improperly considered her conduct during the disciplinary proceedings as a new count or new rule violation against her; (2) whether the referee erred in failing to conduct a bifurcated hearing with a separate evidentiary phase and a penalty phase; (3) whether the referee improperly "punished” her for maintaining her innocence; and (4) whether the referee erred in awarding costs to the Bar because she had no opportunity to challenge the costs. We find these issues to be without merit and do not address them further in this opinion.

. In Florida Bar v. Calvo, 630 So.2d 548 (Fla. 1993), the Court rejected the respondent’s contention that the referee improperly took judicial notice of SEC cases and federal cases that arose out of the conduct that was the subject of the bar disciplinary proceeding against him because the applicable standards of review were different. The Court stated that the difference "goes only to the weight to be accorded to the information in the Florida disciplinary proceeding, not to its admissibility.” Id. at 550; see also Fla. Bar v. Vining, 707 So.2d 670, 673 (Fla.1998).

. In that opinion, the district court reversed a directed verdict granted in favor of the defendant as a sanction for trial counsel’s (respondent Tobkin’s) misbehavior during the course of the litigation and at trial. The court determined that such a sanction was inappropriate where the record did not support a finding that the client herself was personally involved in the attorney’s misconduct. However, the opinion detailed various instances of misconduct and improper behavior on respondent’s part and found his actions before the trial court "willful, deliberate, and contumacious.” Rose, 855 So.2d at 127.

. Respondent also takes issue with two specific statements in the referee's report, not included in the referee’s "factual findings” per se: (1) that "on or about February 18, 2009, respondent withdrew her guilty plea” in the disciplinary proceeding; and (2) that respondent “sat before [the referee] and testified that she did this because she believes the judge was part of an 'old boys club.' ” Respondent contends that she never entered a guilty plea in these proceedings. However, while this may be technically correct, on January 20, 2009, her counsel and bar counsel submitted to the referee a "Joint Stipulation of Settlement,” stating, "Respondent agrees to enter a guilty plea, and sign a Guilty Plea and Consent Judgment in which she formally pleads guilty to violation of the following Rules Regulating the Florida Bar: 4-3.1, 4-3.4(c), 4-8.4(a), and 4-8.4(d)." Based upon this, the referee entered an order cancelling the scheduled final hearing in the case. However, on February 18, 2009, Respondent’s counsel filed a “Motion for Extension of Time To File Report of Referee,” stating that the "language of the guilty plea could not be agreed upon by the parties, however, and the negotiation broke down to the point that Respondent has stated her intention and desire to withdraw her stipulation regarding entering a guilty plea.” Clearly, this is what the referee was referring to in his statement. Further, the statement is irrelevant to any of the material issues in this case. Accordingly, we reject respondent’s argument in this regard.
Respondent also contends that she never testified that she believed the judge was part of an "old boys’ club.” While a review of respondent’s testimony during the final hearing confirms that respondent did not use the words "old boys' club,” she did testify that she believed the bankruptcy judge was biased against her because she was not a bankruptcy lawyer. Thus, although not in so many words, the import of respondent’s testimony was the same. Accordingly, we reject respondent’s argument on this issue.

. See Fla. Stds. Imposing Law. Sanes. 4.52 ("Suspension is appropriate when a lawyer engages in an area of practice in which the lawyer knowingly lacks competence, and causes injury or potential injury to a client.”); 6.12 (“Suspension is appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action.”); 6.22 ("Suspension is appropriate when a lawyer knowingly violates a court order or rule, and causes injury or potential injury to a client or a party, or causes interference or potential interference with a legal proceeding.”); and 7.2 ("Suspension is appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.”).